# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

BEN J. MEISELAS          SBN 277412

Attorneys for Plaintiff CHRISTINE CASTILLO

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CASTILLO, an individual;<br><br>                Plaintiff,<br><br>   vs.<br><br>LA CAÑADA UNIFIED SCHOOL DISTRICT; and DOES 1–10;<br><br>              Defendants. | Case No.: 18-6370<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **DISCRIMINATION AND TERMINATION OF EMPLOYMENT BECAUSE OF PREGNANCY (42 U.S.C. §§ 2000e, et seq.);**<br>2. **DISCRIMINATION AND TERMINATION OF EMPLOYMENT BECAUSE OF PREGNANCY (FORCED LEAVE CLAIM);**<br>3. **UNLAWFUL RETALIATION UNDER TITLE VII;**<br>4. **RETALIATION FOR THE EXERCISE OF FMLA RIGHTS (29 U.S.C. § 2601, et seq.);**<br>5. **DISABILITY DISCRIMINATION UNDER THE ADA (42 U.S.C. § 12101, et seq.);**<br>6. **ADA RETALIATION;**<br>7. **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983);**<br>8. **SEX DISCRIMINATION, RETALIATION, AND WRONGFUL TERMINATION IN VIOLATION** |

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 1 -

OF PUBLIC POLICY
9.  BREACH OF IMPLIED-IN-FACT CONTRACT
10. BEACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
11. RETALIATION (CAL. LAB. CODE § 98.6)
12. RETALIATION (CAL. LAB. CODE § 1102.5)
13. FAILURE TO PROVIDE LACTATION ACCOMMODATIONS (CAL. LAB. CODE §§ 1030–1033)

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This action arises out of a horrific and continuing course of pregnancy discrimination and retaliation by Defendant La Cañada Unified School District ("LCUSD") against Plaintiff Christine Castillo that began in 2012 and continues to the present date.

2. Plaintiff became Principal of La Cañada Elementary School in 2012. In August of that year, she announced that she was pregnant, and thereafter immediately became the victim of blatant discrimination and retaliation by LCUSD.

3. Following Plaintiff's announcement, LCUSD cruelly denied Plaintiff accommodations for her pregnancy, created fraudulent negative evaluations of Plaintiff's performance, removed Plaintiff from her Principal position, denied Plaintiff employment opportunities given to others, and initiated an active defamation campaign against Plaintiff with the aim of preventing her from ever being able to return to an administrative position. Such heinous treatment still continues to the present date.

4. On or about April 5, 2015, Plaintiff filed an internal grievance with Defendant LCUSD for pregnancy discrimination. This led to an internal investigation and a continued course of overt retaliatory conduct through the present.

COMPLAINT FOR DAMAGES

5. On or about June 16, 2015, Defendant's internal investigation was completed. On the same day, Plaintiff was stripped of her Principal position and demoted to a teaching position that Defendant LCUSD was aware Plaintiff could not fill because she was trained as an Administrator.

6. Plaintiff took sick leave pursuant to doctor's notes due to the severe emotional distress she endured as a result of Defendants' conduct. This leave extended until March 2016, at which time Defendants placed Plaintiff on their thirty-nine month reemployment list, in effect surreptitiously terminating her employment. Despite this, Defendants consistently strung Plaintiff along by actively concealing her employment status after bombarding her with conflicting and ambiguous information regarding their employment leave policies, thereby impeding Plaintiff's ability to pursue her legal rights.

7. Plaintiff filed a government tort claim addressing the discrimination and retaliation against her, and this led to further retaliation against her in new and even more egregious forms. Specifically, Defendants promptly launched a pretextual investigation against Plaintiff's husband, and initiated a systematic scheme to remove him from his own position with LCUSD.

8. Once Plaintiff's government tort claim was deemed rejected, she initiated an action in state court, and Defendants' retaliation against Plaintiff escalated to even greater heights. Beginning immediately after Plaintiff filed her Complaint with the Superior Court of California for the County of Los Angeles, Defendant began giving false information about Plaintiff to the community, including influential Booster organizations and teaching committees, with the aim of making it impossible for Plaintiff to return to an administrative position at LCUSD or elsewhere. Defendant falsified reports, stating that Plaintiff was not meeting expectations as an Administrator, and that Plaintiff was a problematic employee.

///

///

COMPLAINT FOR DAMAGES

**PARTIES**

9.     Plaintiff Christine Castillo, at all relevant times, was an individual residing in Los Angeles County, California.

10.     Defendant LCUSD is, and at all times herein mentioned was, a unified school district organized and operating pursuant to the California Education Code. Defendant LCUSD runs, operates, supervises, oversees, manages, budgets, and is responsible for the supervision, hiring, and retention of employees at La Cañada Elementary School.

11.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendants Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is in some manner responsible for the events and happenings herein referred to, either contractually or tortiously, and caused the damages to Plaintiff as herein alleged. When Plaintiff ascertains the true names and capacities of Does 1 through 10, Plaintiff will seek leave of this Court to amend the Complaint by setting forth the identities of the unknown defendants.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it is a civil rights action arising under the Constitution and laws of the United States. This Court has supplemental jurisdiction over the remaining state law and common law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Central District of California.

13.     On May 18, 2016, Plaintiff filed a claim against Defendants pursuant to California Government Code section 910, et seq., and based on the discrimination and retaliation described herein that Plaintiff had experienced up to that point. As there

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

COMPLAINT FOR DAMAGES

was no response to this claim within 45 days of its filing, the claim was deemed rejected.

14. On March 28, 2017, Plaintiff filed a supplemental 910 claim to reflect the subsequent and continuing conduct that had arisen since she submitted her initial 910 claim. This supplemental claim was denied on April 24, 2017.

15. With respect to Plaintiff's causes of action, which reflect continuing conduct by Defendants that has been constant, continuous, pervasive, and/or of the same kind as earlier wrongful conduct by Defendants, Plaintiff timely filed a Complaint with the Equal Employment Opportunity Commission on January 11, 2018, and received a Right to Sue Letter on or about April 26, 2018. Plaintiff's Right to Sue Letter is attached hereto as Exhibit "A." Pursuant to the provisions of this Letter, Plaintiff timely files this Complaint.

16. At all relevant times, Defendant LCUSD regularly was Plaintiff's "employer" as that word is defined under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

## **GENERAL ALLEGATIONS**

17. In July 2012 Defendant LCUSD hired Plaintiff to be Principal of La Cañada Elementary School. Plaintiff moved to Los Angeles from Seattle, Washington to accept the position.

18. In August 2012, Plaintiff met with Superintendent Wendy Sinnette ("Sinnette") to inform Ms. Sinnette that she was pregnant. Plaintiff's husband, Ian McFeat, was in attendance at the meeting. Sinnette reacted very negatively to this news, making statements to Plaintiff such as "This is really going to upset your staff and parents," "I made it clear what this job required," and "I need a drink."

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

COMPLAINT FOR DAMAGES

19. Sinnette reported to the La Cañada Unified Governing Board that Plaintiff was pregnant. Subsequently, Sinnette told Plaintiff that the Board had requested that Sinnette have a further conference with Plaintiff because the Board was disappointed that Plaintiff had "waited" to tell Sinnette about her pregnancy.

20. Later in August 2012, Sinnette met with Plaintiff at La Cañada High School. At this meeting, Sinnette told Plaintiff that she would have liked to have known about Plaintiff's pregnancy sooner. Sinnette also repeated her statement, "I was very clear with you about what this job required," adding "This staff needs a lot of support and I told you that," and "I have to think about what we are going to tell your teachers and parents. This isn't going to go over well."

21. Beginning in October 2012, Plaintiff attended meetings with Defendant LCUSD's Assistant Superintendent of Human Resources, Patty Hager ("Hager"), regarding Plaintiff's pregnancy leave. Hager stated that she had never had a principal go on maternity leave before, so she would do her best to figure out how to handle the situation. Throughout numerous meetings, Plaintiff continued to ask for clarity about the leave time she would be allowed, and Plaintiff continued to receive vague responses from Hager. Hager appeared to Plaintiff to be growing increasingly irritated by her requests.

22. Because Plaintiff could not get a clear answer about her leave from Hager, she took it upon herself to research her options. Plaintiff found this necessary because, as a new LCUSD employee, she was only entitled to ten sick days. Plaintiff discovered that she had missed the deadline to file for disability leave.

23. In November 2012, Plaintiff began to face complications in her pregnancy. She was not gaining weight, and she was experiencing migraines. Per a note from her doctor, Plaintiff requested permission to leave early from Sinnette so that Plaintiff could better cope with these difficulties. Sinnette told Plaintiff that allowing administrators to leave early was not an established practice. She said that it would not be fair to allow Plaintiff to work from home, as other administrators had

COMPLAINT FOR DAMAGES

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

never had the option of doing so, and she went so far as to ask Plaintiff, "Well, what will you be doing from home anyway?"  Plaintiff procured another letter from her doctor explaining the importance of allowing her to leave work early.  Defendant LCUSD delayed in responding to this letter, but finally agreed to allow Plaintiff to leave early for just two weeks.  Ultimately, however, due to the tardiness of Defendant's response, Plaintiff was only able to take advantage of leaving early for just over one week of work before her child was born.

24.    Prior to the birth of her child, Plaintiff met with Sinnette and Hager and explained to them that the two-week limit they had placed on her shortened work days was causing her great difficulty.  Sinnette and Hager told Plaintiff that if she wanted to be paid beyond the two-week period, she would have to perform extra duties.  Sinnette and Hager assigned extra duties to Plaintiff, which were unlike the responsibilities of any other administrator.  Sinnette and Hager requested that these duties be performed before Plaintiff took her maternity leave.  Due to the fact that Plaintiff was not able to take advantage of the full two weeks of part-time work days that had been allotted to her, the extra duties that Sinette and Hager gave to Plaintiff resulted in Plaintiff enduring a drastically increased workload.  Plaintiff worked as much as twelve hours a day to complete the extra tasks she had been given.  At no point in her pregnancy did Defendants grant her physical relief in accommodation of her condition.

25.    Plaintiff worked through December 18, 2012, and gave birth to her daughter, Alissa McFeat, the next day, December 19, 2012.  The stress that Plaintiff had been under due to her work resulted in birthing difficulties, and Plaintiff ultimately had to undergo a caesarean section.

26.    Plaintiff began her maternity leave following the birth of her child.  Approximately one month after the birth, Plaintiff requested to speak with Hager regarding the details of her leave.  In response, Plaintiff received a very hostile email from Hager in which Hager complained about the cost of Plaintiff's leave to LCUSD and insisted that Plaintiff stop inquiring about leave details.

COMPLAINT FOR DAMAGES

27. Plaintiff returned from her maternity leave in April 2012. Immediately upon her return, Plaintiff was subjected to an LCUSD staff survey. The LCUSD staff survey is an evaluation process in which LCUSD employees are evaluated by their staff. Though Plaintiff had been out on leave for a substantial portion of the period of time covered by the staff survey, she was not exempted from the evaluation. Because Plaintiff had been on leave for much of the relevant time period, she received many negative comments in the staff survey.

28. In June 2013, Sinnette gave Plaintiff her evaluation for the 2012–2013 academic year. Sinnette included negative remarks from the LCUSD staff survey in this evaluation, which also featured other negative ratings that failed to take Plaintiff's recent pregnancy and associated leave into consideration.

29. In summer 2013, Plaintiff learned that Sinnette had offered the other two LCUSD elementary school principals an opportunity to work on a project for extra pay during the month of July. Sinnette never offered this opportunity to Plaintiff. When Plaintiff inquired as to why she had been passed over for this project, Sinnette told her that she had figured Plaintiff would not have wanted to work on it because of her new baby.

30. Early in the 2013–2014 academic year, Sinnette told Plaintiff that she was required to attend a staff retreat in San Diego. Plaintiff complained that it would be difficult for her to attend, but Sinnette refused to excuse her from the event or grant her accommodations. Ultimately, Plaintiff had to pay for her parents to accompany her to San Diego so that they could care for her baby while she attended the retreat.

31. In November 2013, Sinnette sent Plaintiff to Washington, D.C. to accept an award on behalf of her school. Plaintiff once again complained about the difficulty of traveling with her young child, but Sinnette again refused to let her out of the trip or provide accommodations. Plaintiff again found herself having to bring her mother along—at her own expense—to care for her baby. Further, the individual whom Sinnette chose to accompany Plaintiff on her trip to Washington was a teacher known

COMPLAINT FOR DAMAGES

to have openly criticized Plaintiff.  Sinnette would not allow Plaintiff to bring another teacher along despite her repeated requests.  Plaintiff is aware that in contrast to her experience, other administrators who have traveled to accept awards have been allowed to bring entire teams of teachers with them.

32.    In February 2014, Sinnette told Plaintiff that she was required to attend a week-long class trip to Pennsylvania.  Plaintiff requested accommodations to enable her to breastfeed during the trip, and proposed two different plans for implementing these accommodations.  Sinnette refused to listen to Plaintiff, and insisted that Plaintiff leave her daughter at home during the trip.  Ultimately, Plaintiff attended the trip.  She found herself frequently having to discard the milk her body was producing, and she felt devastated that she had been separated from her daughter at such a crucial stage of the child's development.  Further, due to Sinnette's denial of accommodations to Plaintiff, Plaintiff had to discard her breast milk at inconvenient and irregular times.  Ultimately this led plaintiff to experience nursing difficulties later on.

33.    On or about March 4, 2014 Sinnette summoned Plaintiff into a meeting under the pretense that the subject of this conference was reassignment of teachers.  Hager and Assistant Superintendent Anais Wenn were in also in attendance.  Plaintiff quickly realized that the true purpose of this meeting was to serve as an evaluation of her performance.  Sinnette criticized Plaintiff's performance as Principal, making statements such as; "I don't believe you have operated at your fullest potential.  I know that having a baby is hard and that you do a lot;" "It was great that you had a baby, but that impacted how things started out for you.  You leaving mid-year did not help winning over the staff;" and, regarding the implementation of a new initiative that was being assigned to Plaintiff, "all hell is going to break loose."  When Plaintiff asked who would support her in the implementation of her new initiative, Hager responded, "I will be in some meetings, but I am not going to do your dirty work for you."

///

COMPLAINT FOR DAMAGES

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

34.    In summer 2014, Sinnette promoted the other two LCUSD elementary school principals from eleven-month employees to twelve-month employees and promoted the assistant principals at La Cañada High School to full-year contracts. Plaintiff received no similar promotion.

35.    On or about March 12, 2015, Sinnette and Hager met with Plaintiff.  At the meeting, Sinnette told Plaintiff that the La Cañada Unified Governing Board had asked Sinnette to deliver a letter to Plaintiff stating that the board was considering not reelecting Plaintiff for the upcoming academic year.  Sinnette told Plaintiff that the reason for the possible non-reelection was "negative staff relationships."  Sinnette told Plaintiff that the Governing Board's decision not to reelect was not yet final, but that from what she had heard, the Board was leaning toward not giving Plaintiff a contract.  In response to this, Hager said, "Well, if you want the ball totally in your court, you just resign."

36.    On or about April 5, 2015, Plaintiff filed an internal complaint against Defendant LCUSD for pregnancy discrimination.  In her complaint, Plaintiff alleged that Sinnette and Hager discriminated and retaliated against Plaintiff because of her pregnancy, request for leave, and gender.  Plaintiff alleged that these individuals were attempting to remove her from her position as Principal of La Cañada Elementary School.

37.    Plaintiff's internal complaint led to an internal investigation of LCUSD by one Ms. Susan Wooley.

38.    On or about May 27, 2015, Sinnette summoned Plaintiff to her office for an evaluation meeting.  Plaintiff asked why she was being evaluated before other LCUSD employees, and was told that it was a procedure set forth by the District.

39.    Plaintiff met with Sinnette in her office, and Sinnette presented Plaintiff with an evaluation that consisted of the lowest marks that Plaintiff had ever received during her career as a school administrator.  None of the issues that served as the basis for the negative remarks on this evaluation had ever been brought to Plaintiff's

**GERAGOS&GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

COMPLAINT FOR DAMAGES

attention before, and all of the negative statements in the evaluation were either based on misinformation, or else related to extremely trivial matters.

40. On or about May 29, 2015, Plaintiff reached out to Ms. Wooley by email. Plaintiff expressed her concerns that the negative evaluation she had just received was retaliatory. Ms. Wooley commented that she could tell that the evaluation was "starkly" different from other evaluations that Plaintiff had received previously.

41. On or about June 16, 2015, Mark Evans ("Evans"), Defendant LCUSD's Chief Business & Operations Officer met with Plaintiff and presented her with a letter that stated that her claims were not substantiated by sufficient evidence. He told Plaintiff that she could expect a summary of the findings of the investigation resulting from her complaint in approximately one week's time.

42. Just minutes after Plaintiff's meeting with Evans, she received a text message from Sinnette requesting that Plaintiff stop by her office. When Plaintiff arrived at Sinnette's office, Sinnette gave Plaintiff a letter from the Governing Board reassigning Plaintiff to a classroom position. Sinnette told Plaintiff not to report to a leadership event that was scheduled for the following day. She further told Plaintiff that Plaintiff had until the end of the following day to clean out her office and turn in her keys. June 16, 2015 was Plaintiff's final day of work as Principal. On the evening of June 16, 2015, Sinnette sent an email to Plaintiff's staff (but not to Plaintiff) announcing La Cañada Elementary School's new Principal.

43. On or about June 29, 2015, Plaintiff received a letter from Defendant LCUSD informing her that she had been assigned to work as a first grade teacher under the direction of Karen Hurley, one of the other LCUSD elementary school principals.

44. In July 2015, Plaintiff reached out to Evans to inquire about the summary of investigation findings that she had been told she would receive. On or about July 9, 2015, Defendant LCUSD informed Plaintiff that certain issues addressed in her

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

COMPLAINT FOR DAMAGES

complaint remained under investigation, and that these had not been resolved immediately due to the unavailability of witnesses.

45.    In early August 2015, Plaintiff once again asked Evans about the investigation summary.  Evans told Plaintiff that the summary had been mailed, but Plaintiff never received it.  Plaintiff asked yet another time about the summary, and finally received it on or about August 8, 2015. The summary provided information on the investigative findings to date, but also stated that certain issues remained under investigation.

46.    Though Plaintiff had been reassigned to a position as a teacher, she received no communications from Defendant's human resources department or from the teachers union, as is customary for new teachers during the summer prior to a school year.  Plaintiff also did not receive a list of her students during this time.

47.    August 12, 2015 was the first day of the 2015–2016 academic year at La Cañada Elementary School.  On the evening prior to this date, Plaintiff indicated that she would be taking sick leave because Plaintiff feared additional discrimination, retaliation, and harassment at the hands of Defendant if she were to take up her teaching position.

48.    During Plaintiff's sick leave, she received numerous harassing emails from Dr. Jeff Davis, Defendant's Assistant Superintendent, Human Resources.  Dr. Davis continually admonished Plaintiff about the number of sick days she had remaining, and stated that Plaintiff was entitled to only ten such sick days, as a newly hired LCUSD teacher would be, thus taking no account for the sick time that Plaintiff had accrued during her former time as Principal.  Dr. Davis also admonished Plaintiff about the fact that she would need to renew her teaching credential.  Dr. Davis chose to bring up this matter only once the school year had begun, however, having made no mention of it for the entirety of the prior summer.  Dr. Davis stated that Plaintiff could not be paid until she had updated her credential.

///

COMPLAINT FOR DAMAGES

49. In accordance with Dr. Davis's admonitions, Plaintiff renewed her teaching credential at her own cost. As soon as she submitted the updated credential, however, Plaintiff was told that she needed to produce an additional certification to teach English Language Learner Students.

50. Once Plaintiff had exhausted her accrued sick time, she took "differential leave" pursuant to her teacher contract, which allowed for this leave upon the submission of doctor's notes. The differential leave arrangement was such that Plaintiff would only receive partial pay while on leave representing the difference between Plaintiff's pay and the amount required to hire a substitute teacher. Beginning in September 2015, Plaintiff regularly submitted notes from her doctor to support her differential leave.

51. On or about November 18, 2015, Evans submitted a final investigative report. This report, along with the August 8 investigation summary revealed that (1) Defendant LCUSD did not have an updated maternity leave policy, (2) Plaintiff's options for maternity leave were not properly addressed or communicated to her by Defendant LCUSD, and (3) an employee of Defendant LCUSD improperly released confidential information about Plaintiff to a third party.

52. From September 2015 through January 2016 Plaintiff regularly consulted with her physician and psychological therapist regarding the emotional distress she had sustained as a result of Defendant's conduct. Additionally, during this time, Defendant harassed Plaintiff by continually arranging meetings and other obligations for Plaintiff close to the intervals at which she submitted doctor's notes, so as to create obligations for Plaintiff even before she had the opportunity to indicate that she would be continuing her differential leave.

53. On January 20, 2016, Defendant indicated to Plaintiff that the teacher position she had been offered was no longer available, and Defendant purported to offer Plaintiff an instructional support position, knowing full well that Plaintiff would be unable to fill it due to her medical and psychological condition.

COMPLAINT FOR DAMAGES

54. During the period from September 2015 through March 2016 Defendant bombarded Plaintiff with all manner of paperwork regarding different forms of employment leave. The numerous forms of leave discussed by Defendant's HR department greatly confused Plaintiff about her leave status.

55. In March 2016 Defendant placed Plaintiff on its thirty-nine month reemployment list, indicating to Plaintiff that she could return to an employment position at LCUSD as soon as she was medically able. Plaintiff understood this to mean that she was still an LCUSD employee, but that she had simply been shifted to another type of employee leave.

56. Unbeknownst to Plaintiff, however, assignment to the thirty-nine month reemployment list amounted to a purported termination for Defendants' administrative purposes. Because Plaintiff did not understand this, she continued to submit doctor's notes regularly to support her leave from employment with LCUSD. Under the impression that she was still employed, Plaintiff submitted the latest of these notes on April 21, 2016. Indeed, Plaintiff was very surprised to receive an April 29, 2016 letter from LCUSD indicating that she was not required to continue submitting doctor's notes to support her leave. Before receiving this April 29, 2016 letter, Plaintiff did not have any basis for believing that her being on the thirty-nine month reemployment list was different in any material respect from her being on her previous form of leave.

57. On May 18, 2016, Plaintiff filed a claim against Defendants pursuant to California Government Code section 910, et seq., and based on the discrimination and retaliation described herein that she had experienced up to that point. As there was no response to this claim within 45 days of its filing, the claim was deemed rejected. Although her claim was deemed rejected, Plaintiff was still under the impression that she had not been terminated, still, however, she had been denied the opportunity to return to an administrative position with LCUSD of the type from which she had been demoted.

///

- 14 -

COMPLAINT FOR DAMAGES

58.    In October 2016, Plaintiff's husband, Ian McFeat became the subject of retaliation by Defendant.  Mr. McFeat had been in a meeting with his assistant, an individual by the name of Jim Cartnall.  Mr. Cartnall had made a comment casting Mr. McFeat in a negative light during a meeting that was attended by numerous other people.  Mr. McFeat later called Mr. Cartnall into a private discussion in his office in which Mr. McFeat indicated that he had felt this comment was inappropriate.  Mr. Cartnall, who maintains a close personal relationship with Ms. Sinnette, responded by saying that Mr. McFeat was "not his supervisor."  While Mr. McFeat expected that this conflict would be resolved informally, pursuant to LCUSD protocol for such minor disputes, Mr. McFeat soon learned that LCUSD had accepted a formal complaint regarding the matter from Mr. Cartnall, and launched a full investigation of Mr. McFeat, which included the hiring of an investigator, and the requirement that Mr. McFeat attend a mediation session.

59.    Since the investigation stemming from Mr. Cartnall's complaint, Mr. McFeat has experienced a marked decline in his performance evaluations, and has begun to notice a distinct shift in the tone of the language in these documents.  The trend in these evaluations clearly indicates that the investigation resulting from Mr. Cartnall's complaint was an act of retaliation for Plaintiff's having submitted her 910 claim.  This retaliation has continued with increasingly negative evaluations, which constitute part of a plan by Defendant LCUSD to terminate Mr. McFeat in retaliation for Plaintiff's actions in pursuing her claims against LCUSD.  This fact is confirmed by a comment that Sinnette made regarding the fact that Plaintiff and her husband had both been LCUSD administrators.  Around the time that the investigation of Mr. McFeat commenced, Sinnette stated, "I'm never going to hire a married couple again."  As this statement makes clear, Defendants' actions in investigating Mr. McFeat and working to remove him were calculated to retaliate against Plaintiff by completely excising her family from the LCUSD community.

///

- 15 -

COMPLAINT FOR DAMAGES

60. On December 28, 2016, Plaintiff filed a Complaint for Damages in the Superior Court of California for the County of Los Angeles against Defendants based on the conduct of LCUSD and its agents as alleged in her 910 claim. Her state court case, Los Angeles Superior Court Case No. BC645137, is currently pending.

61. Following Plaintiff's pursuit of her legal rights through her Superior Court Complaint, Plaintiff became the subject of further retaliation.

62. On January 4, 2017, Defendant issued a false public statement in response to Plaintiff's lawsuit. This statement misrepresented the facts of Plaintiff's removal from her principal position and falsely indicated that Plaintiff's performance in that capacity had been inadequate. Defendant distributed this statement to all LCUSD staff. Defendant's issuance and distribution of a statement specifically addressing Plaintiff's lawsuit was entirely atypical, as the District ordinarily does not issue statements regarding lawsuits against it, nor distribute statements to its entire staff. Defendant's widespread dissemination of its false statement was instead an act deliberately intended to humiliate Plaintiff and to prevent her return to employment in an administrative position at LCUSD, or at any other comparable school district, that was carried out in direct retaliation for Plaintiff having filed her lawsuit.

63. Subsequent to its initial distribution of its defamatory statement, Defendant began making an active effort to further disseminate its false remarks about Plaintiff by reading the statement publicly and prompting discussion of the statement with numerous staff, parent, and community groups.

64. In January 2017, Sinnette attended a Booster meeting along with Ellen Multari ("Multari"), a La Cañada Governing Board Member. "Boosters" are influential parents who raise large amounts of funds for LCUSD. Plaintiff's husband, Ian McFeat, is Principal of La Cañada High School, and it is his responsibility to lead Booster meetings. Before he could get up to speak at the January meeting, however, Sinnette and Multari read LCUSD's statement regarding Plaintiff's lawsuit to the entire audience with the deliberate intention of humiliating Mr. McFeat, whose speech

- 16 -

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

immediately followed theirs. In fact, many parents who had attended the meeting went so far as to comment that they felt that Sinnette and Multari's reading of the statement was highly inappropriate.

65. Subsequent to the Booster meeting, Sinnette held meetings with other staff groups on a frequent and regular basis in which she continued to read LCUSD's statement and offer it for discussion with the intention of retaliating against Plaintiff by defaming her, and eliminating her ability to ever return to an administrative position at LCUSD or elsewhere. Sinnette then went even further by holding meetings with parent and other community groups not consisting of LCUSD employees, continuing to disseminate the false statement and to further defame Plaintiff.

66. Defendants' defamatory acts were carried out with the intention of retaliating against Plaintiff, and making it impossible for Plaintiff ever to return to an administrative position at LCUSD or elsewhere.

67. On March 27, 2017, Plaintiff requested employment information from LCUSD for tax purposes. In response to her request, Plaintiff received a document that indicated that she had been terminated from her employment with LCUSD. Before receiving this document, Plaintiff had been unaware that her placement on the thirty-nine month reemployment list had operated as a termination.

68. To the present, Defendant LCUSD continues to act as though Plaintiff is an LCUSD employee, having indicated by letter as recently as April 21, 2017 that Plaintiff is an LCUSD employee, that she should return to work at LCUSD as soon as she is able, and that teaching positions are available for Plaintiff to fill. Further, Defendant's efforts to defame Plaintiff and to effectuate the removal of her husband from his position with LCUSD continue to the present date as well.

///

///

///

COMPLAINT FOR DAMAGES

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

**FIRST CAUSE OF ACTION**

**DISCRIMINATION AND TERMINATION OF EMPLOYMENT BECAUSE OF PREGNANCY**

**(TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e, et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k))**

**(Plaintiff against all Defendants)**

69. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70. The Pregnancy Discrimination Act prohibits discrimination in the terms and conditions of employment and the discharge of an employee based on the employee's pregnancy. 42 U.S.C. §§ 2000e(a)(1), 2000e(k).

71. As outlined above, Defendants discriminated against Plaintiff Castillo in the terms and conditions of her employment, including but not limited to by denying Plaintiff accommodations, demoting Plaintiff, and terminating her employment.

72. In doing so, Defendants acted maliciously and with reckless indifference to Plaintiff's right to be free from discrimination based on her pregnancy.

73. Defendants' wrongful conduct has been frequent, continuous, and pervasive since the time that Plaintiff first announced her pregnancy, and said conduct continues up until the present date.

74. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, compensation for past and future physical and emotional distress, punitive damages, reasonable attorney's fees, costs of this action, and pre-judgment interest.

///

///

///

///

///

- 18 -

COMPLAINT FOR DAMAGES

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## SECOND CAUSE OF ACTION

### DISCRIMINATION AND TERMINATION OF EMPLOYMENT BECAUSE OF PREGNANCY (FORCED LEAVE CLAIM)

### (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e, et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k))

### (Plaintiff against all Defendants)

75. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76. In violation of Title VII, as amended by the Pregnancy Discrimination Act, Defendants discriminated against Plaintiff on the basis of her sex, which includes pregnancy, when it forced her to use her FMLA leave time.

77. In further violation, Defendants again discriminated against Plaintiff on the basis of sex, which includes pregnancy, when Plaintiff sought to use the leave exhausted by the previously forced use of her FMLA leave.

78. In taking the above-described discriminatory actions, Defendant acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provision of Title VII and the Pregnancy Discrimination Act.

## THIRD CAUSE OF ACTION

### UNLAWFUL RETALIATION UNDER TITLE VII

### (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e, et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k))

### (Plaintiff against all Defendants)

79. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80. In violation of Title VII, as amended by the Pregnancy Discrimination Act, Defendant unlawfully retaliated against Plaintiff by terminating her after she engaged in the protected activity of requesting reasonable accommodations for her pregnancy, opposing Defendants' refusal to reasonably accommodate her, and

pursuing related legal action. Such protected activity was a substantial or motivating factor in Defendants' decision to terminate Plaintiff.

81. In engaging in the above-described discriminatory conduct, Defendants acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provision of Title VII and the Pregnancy Discrimination Act.

82. Plaintiff has lost wages, promotional opportunities, and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Defendants' unlawful conduct.

## FOURTH CAUSE OF ACTION

## RETALIATION FOR THE EXERCISE OF FMLA RIGHTS

## (FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601, et seq.)

## (Plaintiff against all Defendants)

83. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84. Plaintiff put Defendants on notice of her need for leave under the Family and Medical Leave Act, for which she was qualified, when she notified Defendants in 2012 that she was pregnant and would require accommodations in her work, and also during the period spanning from August 2015 to April 2016, when she provided Defendants with doctor's notes to support her leave.

85. Defendants violated the Family and Medical Leave Act when they altered the terms and conditions of Plaintiff's employment through their ongoing harassment of Plaintiff in retaliation of her exercise of her FMLA rights.

86. Defendants demoted Plaintiff and/or terminated Plaintiff's employment in retaliation for Plaintiff's exercise of her rights under the Family and Medical Leave Act.

//

//

COMPLAINT FOR DAMAGES

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

87.     Defendants' violations of the Family and Medical Leave Act, as described herein, were willful and intentional.  Defendants did not make a good-faith effort to comply with the Family and Medical Leave Act with respect to Plaintiff.

88.     Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, liquidated damages, and reasonable attorney's fees and costs of this action.

## FIFTH CAUSE OF ACTION

## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990

## (AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq., as amended by the ADA Amendments Act of 2008)

## (Plaintiff against all Defendants)

89.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     Plaintiff was affected by a disability that is covered by the ADA, namely her pregnancy.

91.     Defendants knew of Plaintiff's disability prior to her demotion and termination.

92.     Defendants discriminated against Plaintiff on the basis of her disability, in violation of the ADA, by failing to offer Plaintiff reasonable accommodations for her disability and by demoting Plaintiff and terminating Plaintiff's employment because of her disability. Such discrimination was a substantial or motivating factor in Defendants' decision to terminate Plaintiff.

93.     Plaintiff has lost wages, promotional opportunities, and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Defendant's unlawful conduct.

//

- 21 -

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## SIXTH CAUSE OF ACTION

## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990

## (AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq., as amended by the ADA Amendments Act of 2008)

## (Plaintiff against all Defendants)

94.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95.     In violation of the ADA, Defendant unlawfully retaliated against Plaintiff by demoting and terminating her after she repeatedly requested reasonable accommodations for her pregnancy, and by engaging in other unlawful conduct directed at Plaintiff as described herein, after she opposed Defendants' denial of reasonable accommodations to her and pursued legal action. Such protected activities were a substantial or motivating factor in Defendants' decision to terminate Plaintiff.

96.     In engaging in the above-described conduct, Defendant acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provisions of the Americans with Disabilities Act and the ADA Amendments Act of 2008.

97.     Plaintiff has lost wages, promotional opportunities, and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Defendants' unlawful conduct.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS

## (42 U.S.C. § 1983)

## (Plaintiff against all Defendants)

98.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

COMPLAINT FOR DAMAGES

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

99. At all times material to this Complaint, Defendants were acting under color of the law in violating Plaintiff's constitutional rights as herein alleged under the First and Fourteenth Amendments to the Constitution of the United States. The First and Fourteenth Amendments are made applicable to the States pursuant to 42 U.S.C. §1983.

100. Plaintiff has a constitutional right to equal protection of the laws of the United States and a constitutional right to be free from sex discrimination in her employment. Defendants unlawfully discriminated against Plaintiff in her employment by demoting and terminating her due to her sex and pregnancy, and Defendants thereby deprived Plaintiff of rights, privileges, and immunities secured to her by the First and Fourteenth Amendments to the Constitution of the United States.

101. Defendants' wrongful conduct has been frequent, continuous, and pervasive since the time that Plaintiff first announced her pregnancy, and said conduct continues up until the present date.

102. Plaintiff is entitled to damages as a result of Defendants' unlawful acts, including past and future lost wages and benefits, compensation for past and future physical and emotional distress, punitive damages, costs of this action, and pre-judgment interest. Plaintiff is further entitled to reasonable attorney's fees pursuant to 42 U.S.C. §1988.

## EIGHTH CAUSE OF ACTION

## SEX DISCRIMINATION, RETALIATION, AND WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (Cal. Const. art. I, § 8)

### (Plaintiff against all Defendants)

103. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104. The Constitution of the State of California provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or

COMPLAINT FOR DAMAGES

employment because of sex, race, creed, color, or national or ethnic origin." Cal. Const. art. I, § 8.

105. California law favors the inclusion of pregnancy within the scope of the prohibitions against sex discrimination embodied in the California Constitution. *Merrell v. All Seasons Resorts, Inc.* (C.D. Cal. 1989) 720 F.Supp. 815, 822. Defendants thus discriminated against Plaintiff on the basis of her sex or gender in violation of the Constitution of the State of California.

106. "[A] private right of action for sex discrimination in employment exists under the California Constitution." *Merrell v. All Seasons Resorts, Inc.* (C.D. Cal. 1989) 720 F.Supp. 815, 819. "It is axiomatic that a constitutional right needs no enabling legislation to provide for its enforcement." *Id.* at 818.

107. Defendants infringed on Plaintiff's constitutional right to be free of discrimination in the workplace by taking adverse employment action against Plaintiff due to her pregnancy, including but not limited to by removing Plaintiff from her position as Principal of La Cañada Elementary School, and by otherwise subjecting Plaintiff to disparate treatment, including but not limited to by denying her employment opportunities and spreading defamatory remarks about Plaintiff by way of a false public statement, by initiating a pretextual investigation and plan of removal against her husband, by terminating Plaintiff, and by retaliating against Plaintiff for opposing Defendants' wrongful conduct and pursuing related legal action.

108. Plaintiff has lost wages, promotional opportunities, and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Defendants' unlawful conduct.

//

//

//

//

- 24 -

COMPLAINT FOR DAMAGES

## NINTH CAUSE OF ACTION

## BREACH OF IMPLIED-IN-FACT CONTRACT

### (Plaintiff against all Defendants)

109. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110. Plaintiff worked for Defendant under a contract of employment.

111. Pursuant to California Civil Code section 1619, et seq., a contract may be implied by the conduct of the parties to it.

112. Defendant LCUSD's conduct including but not limited to its hiring of Plaintiff as Principal of La Cañada Elementary School and its inducing her to move from the State of Washington to the State of California to accept this position established an implied-in-fact term of Plaintiff's employment that Plaintiff would not be terminated or demoted without cause.

113. Each party intended that a contract be formed and acted as though a contract had been formed.

114. In removing Plaintiff from her principal position, reassigning her to the classroom, and ultimately terminating Plaintiff because of her pregnancy and complaints about pregnancy discrimination, Defendant LCUSD breached the terms of its implied contract with Plaintiff.

115. As a direct and proximate result of the unlawful, and wrongful acts of Defendants, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.

## TENTH CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Plaintiff against all Defendants)

116. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

- 25 -

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

117. Plaintiff worked for Defendants under a contract of employment.

118. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 (quoting Rest.2d Contracts, § 205). "[T]he courts employ the good faith doctrine to effectuate the intentions of parties, or to protect their reasonable expectations" *Id.* (quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 371).

119. Defendants breached the implied covenant of good faith and fair dealing inherent in their employment contract with Plaintiff by discriminating against Plaintiff, denying Plaintiff accommodations, demoting and terminating her, and perpetrating other wrongful conduct against Plaintiff as alleged, in contravention of the laws of the United States and of the State of California and thereby nullifying the intentions of the parties in entering the contract and denying Plaintiff the benefit of her bargain.

120. Plaintiff has lost wages, promotional opportunities, and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Defendants' unlawful conduct.

## ELEVENTH CAUSE OF ACTION

### RETALIATION (CAL. LAB. CODE § 98.6)

#### (Plaintiff against all Defendants)

121. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122. At all times herein mentioned, section 98.6 of the California Labor Code, was in full force and effect, and was binding on Defendants. Plaintiff was, at all times material hereto, an employee covered by the provisions and protections of section 98.6 of the California Labor Code. Section 98.6 of the California Labor Code requires

COMPLAINT FOR DAMAGES

Defendants to refrain from discriminating or retaliating against any employee because that employee "has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner . . . ." Cal. Lab. Code § 98.6.

123. The above-described conduct by Defendants violates section 98.6 of the California Labor Code, which prohibits discrimination and retaliation against employees because they have "filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to [their] rights that are under the jurisdiction of the Labor Commissioner." Cal. Lab. Code § 98.6.

124. By taking adverse employment action against Plaintiff due to her complaints regarding pregnancy discrimination, including but not limited to by removing Plaintiff from her position as Principal of La Cañada Elementary School in retaliation for her having submitted an internal complaint against Defendant LCUSD on April 5, 2015, and by demoting and surreptitiously terminating Plaintiff, Defendants discriminated and retaliated against Plaintiff in violation of section 98.6 of the California Labor Code.

125. As a direct and proximate result of the tortious, unlawful, and wrongful acts of Defendants, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial. Plaintiff has been damaged emotionally and financially, including but not limited to by emotional suffering from emotional distress and ridicule, as well as loss of income, employment, and career benefits.

126. In engaging in the conduct as hereinabove alleged, Defendants acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and wellbeing, and intended to subject Plaintiff to unjust hardship, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

//

- 27 -

COMPLAINT FOR DAMAGES

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## TWELVTH CAUSE OF ACTION

## RETALIATION (CAL. LAB. CODE § 1102.5)

### (Plaintiff against all Defendants)

127. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128. At all times herein mentioned, section 1102.5 of the California Labor Code, was in full force and effect, and was binding on Defendants. Plaintiff was, at all times material hereto, an employee covered by the provisions and protections of section 1102.5 of the California Labor Code. Section 1102.5 of the California Labor Code requires Defendants to refrain from retaliating against any employee for

disclosing information . . . to a government or law enforcement agency [or] to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

129. The above-described conduct by Defendants violates section 1102.5 of the California Labor Code, which prohibits retaliation against employees.

130. By taking adverse employment action against Plaintiff due to her complaints regarding pregnancy discrimination, including but not limited to by removing Plaintiff from her position as Principal of La Cañada Elementary School in retaliation for her having submitted an internal complaint against Defendant LCUSD on April 5, 2015, and by demoting and surreptitiously terminating Plaintiff, Defendants retaliated against Plaintiff in violation of section 1102.5 of the California Labor Code.

//

GERAGOS&GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

131. As a direct and proximate result of the tortious, unlawful, and wrongful acts of Defendants, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial. Plaintiff has been damaged emotionally and financially, including but not limited to by emotional suffering from emotional distress and ridicule, as well as loss of income, employment, and career benefits.

132. In engaging in the conduct as hereinabove alleged, Defendants acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and wellbeing, and intended to subject Plaintiff to unjust hardship, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

**THIRTEENTH CAUSE OF ACTION**

**FAILURE TO PROVIDE LACTATION ACCOMMODATIONS**

**(CAL. LAB. CODE §§ 1030–1033)**

**(Plaintiff against all Defendants)**

133. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

134. At all times herein mentioned, sections 1030–1033 of the California Labor Code, were in full force and effect, and were binding on Defendants. Plaintiff was, at all times material hereto, an employee covered by the provisions and protections of sections 1030–1033 of the California Labor Code. Sections 1030–1033 of the California Labor Code require, inter alia, that "[e]very employer, including the state and any political subdivision, shall provide a reasonable amount of break time to accommodate an employee desiring to express breast milk for the employee's infant child."

135. Defendants violated sections 1030–1033 of the California Labor Code by denying lactation accommodations to Plaintiff.

//

COMPLAINT FOR DAMAGES

136.   As a direct and proximate result of the tortious, unlawful, and wrongful acts of Defendants, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.  Plaintiff has been damaged emotionally and financially, including but not limited to by emotional suffering from emotional distress and ridicule, as well as loss of income, employment, and career benefits.

137.   In engaging in the conduct as hereinabove alleged, Defendants acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and wellbeing, and intended to subject Plaintiff to unjust hardship, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CHRISTINE CASTILLO respectfully requests for judgment to be entered against Defendants as follows:

1.   For general and special damages in an amount to be determined at trial;

2.   For punitive damages with respect to all causes of action;

3.   For pre- and post-judgment interest according to proof;

4.   For attorney's fees and costs of suit incurred herein; and

5.   For all other relief as this court may deem just and proper.

DATED:  July 24, 2018                     **GERAGOS *&* GERAGOS APC**

By:   /s/Ben Meiselas
BEN MEISELAS
Attorneys for Plaintiff
CHRISTINE CASTILLO

**GERAGOS*&*GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff CHRISTINE CASTILLO hereby demands a jury trial.


**GERAGOS** *&* **GERAGOS, APC**

DATED:  July 24, 2018


By:  /s/Ben Meiselas
    BEN J. MEISELAS
    Attorneys for Plaintiff
    CHRISTINE CASTILLO

**GERAGOS**&**GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

# Exhibit "A"



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7016 2140 0000 5582 0296

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

April 26, 2018

Ms. Christine Castillo
c/o Mallory Whitelaw, Esquire
Law Offices of Geragos & Geragos
644 S. Figueroa Street
Los Angeles, CA  90017-3411

Re:  EEOC Charge Against La Canada Unified School District
    No. 480201801317

Dear Ms. Castillo:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Los Angeles District Office, Los Angeles, CA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

John M. Gore
Acting Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Los Angeles District Office, EEOC
    La Canada Unified School District



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7016 2140 0000 5582 0296

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

April 26, 2018

Ms. Christine Castillo
c/o Mallory Whitelaw, Esquire
Law Offices of Geragos & Geragos
644 S. Figueroa Street
Los Angeles, CA  90017-3411

Re:  EEOC Charge Against La Canada Unified School District
     No. 480201801317

Dear Ms. Castillo:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:  Title I of the Americans with Disabilities Act of 1990,  42 U.S.C. 12111, et seq., and,  Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Los Angeles District Office, Los Angeles, CA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

John M. Gore
Acting Assistant Attorney General
Civil Rights Division

by  *Karen L. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Los Angeles District Office, EEOC
    La Canada Unified School District

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

"Regarded as" coverage:
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:    Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.